IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-395-MAB |
| | ) |
| CHARLES SWISHER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment on the issue of exhaustion filed by Defendants Jana Reuter and Anthony Williams (Doc. 72) and Michael Bailey, Phillip Baker, James Belford, Mark Bell, Garrick Hale, Charles Heck, Derek Hermann, Justin Jurkowski, Brandon Justice, Kale Lively, Robert O'Leary, Patrick Peek, Wesley Shirley, Robert Tomshack, Treg Vanderkerkhove, and Donald Wanack (Doc. 96). For the reasons explained below, both motions are denied.

BACKGROUND

Plaintiff Joshua Hoskins, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit on April 30, 2020 pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (Doc. 1). Plaintiff filed an amended complaint on May 27, 2020, alleging that between June 5, 2019 and April 30, 2020, twenty-nine prison officials and medical providers at Pinckneyville Correctional Center conspired to deny

him psychotropic medications and mental health care (Doc. 14). Plaintiff alleges these actions were taken in retaliation for previous grievances and lawsuits that he filed against prison staff at Pinckneyville. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims

> **Count 1:** Eighth Amendment deliberate indifference to medical needs claims against all Defendants for denying Plaintiff access to psychotropic medications.
>
> **Count 2:** First Amendment retaliation claim against all Defendants for denying Plaintiff access to medications in retaliation for filing grievances.

(Doc. 16). Warden Jeff Dennison was also added as a Defendant in his official capacity solely for the purpose of implementing any injunctive relief that may be ordered (*Id.*).

Defendants, Jana Reuter and Anthony Williams, who are both mental health professionals, filed their motion for summary judgment on the issue of exhaustion on January 11, 2021 (Docs. 72, 74). Sixteen of the other Defendants (the "IDOC Defendants")—Bailey, Baker, Belford, Bell, Hale, Heck, Hermann, Jurkowski, Justice, Lively, O'Leary, Peek, Shirley, Tomshack, Vanderkerkhove, and Wanack—who are all correctional officers, filed theirs on June 17, 2021 (Docs. 96, 97). Plaintiff filed a response (Doc.103), supplemental responses (Doc. 102, Doc. 114), and various related motions (Docs. 101, 105, 109).

All of the moving Defendants acknowledge there are relevant grievances that Plaintiff fully exhausted, however, they argue that they were not identified by name or otherwise described in those grievances (Docs. 74, 97). Plaintiff has long-maintained that there are numerous other grievances he submitted that prison officials destroyed or never

responded to (*see, e.g.,* Doc. 1, 102, 105).[1] Plaintiff also argues that he has an extensive history of exhausting his administrative remedies, which demonstrates he would have exhausted his claims prior to filing this lawsuit if the grievance process had been available to him. Defendants counter that Plaintiff's assertions regarding unanswered grievances are not credible and fly in the face of the evidence (Doc. 74, pp. 12–15; Doc. 97, p. 9). After fully reviewing the materials filed by all of the parties, the Court has determined that it need not hold an evidentiary hearing to determine whether Plaintiff was credible in his assertions that the grievance process was rendered unavailable to him because, regardless of how this disputed issue of fact might be resolved, there are other reasons to deny the motions for summary judgment.

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A]

---

[1] Plaintiff made this same argument in a number of other cases in this district with mixed success. *See* SDIL Case Nos. 19-cv-1303-GCS, Doc. 98 (finding Plaintiff not credible that some of his grievances were destroyed); 20-cv-302-RJD, Doc. 116 (finding Plaintiff credible that some of his grievances were never responded to).

judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). As previously indicated above, the Court has determined that no hearing is necessary in this instance.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at

903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations first require the grievance to first go through the inmate's counselor, then the grievance officer and warden, and then appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board for a final determination. *Id.* at §§ 504.810(a),[2] 504.830(e), 504.850(a), § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

## DISCUSSION

A grievance log reveals that in a span of approximately ten and a half months— from June 10, 2019 until Plaintiff filed suit on April 30, 2020—he filed nearly 80 grievances

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

(*see* Doc. 74-2). Defendants Reuter and Williams submitted 90 pages of grievance records, (Doc. 74-3), and the IDOC Defendants submitted nearly 900 pages (Doc. 98, 99). It is undisputed that Plaintiff fully exhausted a number of grievances that contained complaints about correctional staff forcing Plaintiff to refuse his psychotropic medications, which is the issue at the heart of Plaintiff's claims in this case (Doc. 74, pp. 3–7, 11; Doc. 97, pp. 5–8). A detailed factual account of all the grievances is not necessary. Rather, the Court believes it necessary to only recounts the essential facts in the course of the discussion below.

### A. DEFENDANTS JANA REUTER AND ANTHONY WILLIAMS

In their motion for summary judgment, Defendants Reuter and Williams pointed to Plaintiff's complaint, in which he referenced sixteen grievances that he asserted were sufficient to exhaust his administrative remedies as to all claims in this case (Doc. 74, pp. 11–12). Reuter and Williams argue that they were not named or described in any of these sixteen grievances and therefore Plaintiff failed to exhaust as to them (*Id.*). To be clear, Reuter and Williams only discussed the sixteen grievances that Plaintiff mentioned in his complaint (*see* Doc. 74). And, of course, Reuter and Williams were not named in any of those sixteen grievances—they all pre-dated Plaintiff's interactions with Reuter and Williams. The grievances are dated between June 24 and September 19, 2019 (*see* Doc. 74, pp. 3–7; Doc. 74-3). But as Defendants point out, Plaintiff's alleged interactions with Reuter did not occur until November 2019 and March 2020 while his interactions with Williams occurred in October and November 2019 (Doc. 74, pp. 2–3; Doc. 1, pp. 63, 67, 71). There are some 20-plus grievances that Plaintiff submitted after October 2019 (*see*

Doc. 74-2), any of which could have potentially addressed Defendants Reuter and Williams' purported misconduct. However, Reuter and Williams neither discussed nor provided copies of any of these grievances.

It is important to reiterate that exhaustion is an affirmative defense, which the *defendants bear the burden of proving*. *Pavey*, 663 F.3d at 903 (citations omitted). Plaintiff was not required to specifically plead or demonstrate exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). *Accord Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("[A] plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses.") (citation omitted); *Mosely*, 434 F.3d at 533 ("[The plaintiff] had no obligation to allege facts negating an affirmative defense in her complaint[.]"). Therefore, it is of no consequence that Reuter or Williams were not named or described in any of the grievances Plaintiff referenced in the complaint. It is Reuter and Williams' responsibility to demonstrate that Plaintiff did not exhaust his administrative remedies, which necessarily requires them to analyze Plaintiff's *entire* grievance record, particularly the grievances he submitted following his interactions with them, and not just the grievances he referenced in his complaint. Because they looked at only the portion of Plaintiff's grievances that pre-dated their interactions with them, their motion is insufficient to satisfy their burden of establishing that Plaintiff failed to exhaust his administrative remedies prior to filing suit. They are not entitled to summary judgment and their motion is denied.

### B. THE IDOC DEFENDANTS

Like Defendants Reuter and Williams, the IDOC Defendants argue that they were

not identified in any of Plaintiff's fully exhausted grievances and therefore he failed to exhaust as to them (Doc. 97, pp. 5–8). The Court disagrees.

Plaintiff's claims that various correctional officers coerced or forced him to refuse his psychotropic medications on an ongoing basis between June 2019 and April 2020 involves a continuing violation. When a case involves a continuing violation, the prisoner "need not file multiple, successive grievances raising the same issue" because "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("It would make little sense to require a prisoner being subjected to a frigid cell to continue to file grievances stating that the cell remains frigid[.]"). "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Turley*, 729 F.3d at 650.

It is undisputed that there are at least *eight* fully exhausted grievances relevant to the issue at hand, which are listed below.

1. Grievance 2040-07-19 dated June 27, 2019 (Doc. 74-3, pp. 62–67). Plaintiff complained that he was being threatened and denied all human necessities, including his prescribed psychotropic medications. He did not include any names of individuals involved in the purported misconduct.
2. Grievance 2041-07-19 dated June 27, 2019 (Doc. 74-3, pp. 87–90). Plaintiff complained that "security staffs and supervisors" had been threatening him and forcing him to refuse his prescribed psychotropic medications. The grievance officer's response indicates that Plaintiff told a mental

      health provider that Officer Swisher was forcing him not to take his medications.
3. Grievance 2075-07-19 dated July 3, 2019 (Doc. 74-3, pp. 15–18). Plaintiff complains that he was being denied his prescribed psychotropic medications. He did not include any names of individuals involved in the purported denials.
4. Grievance 2398-07-19 dated July 30, 2019 (Doc. 74-3, pp. 40–43). Plaintiff complains that Wall, Meracle, Dudek, Swisher, Smith, Mayer, Grove told him he better refuse all mental health services and his psychotropic medications.
5. Grievance 2635-08-19 dated August 19, 2019 (Doc. 74-3, pp. 11–14). It is primarily about being denied toothpaste and a toothbrush and associated dental issues. However, it also mentions that the "named staff and other staff assigned to 5 house" had not been allowing him to receive medical treatment and his prescribed psychotropic medications.
6. Grievance 2794-09-19 dated September 3, 2019 (Doc. 74-3, pp. 1–10). This grievance was fully exhausted. It grieves in pertinent part that Lt. Wall and Officer Swisher had been forcing him to refuse his prescribed psychotropic medications and mental health evaluations.
7. Grievance 2793-09-19 dated September 3, 2019 (Doc. 74-3, pp. 32–35). Plaintiff mentions that Swisher previously forced him to refuse his medications and he filed a lawsuit against Swisher. Adams, in the presence of Meracle and Smith, told him on July 8, 2019 that he better refuse his medications. And Kulich told him the same on August 1, 2019 and numerous other dates in June and July of 2019.
8. Grievance 3111-09-19 dated September 19, 2019 (Doc. 74-3, pp. 36–39). Plaintiff's primary complaint is that a nurse practitioner discontinued his psychotropic medications. He also mentions, however, that the nurse practitioner knew he was being forced to refuse his medications, and she could have done something to ensure that correctional staff could not interfere with his medication, but she didn't. He does not name the staff who was purportedly forcing him to refuse his medications

As is evident from the brief descriptions of these grievances, Plaintiff specifically named a number of officers and also spoke more generally about "security staffs and supervisors" and "staff assigned to 5 house." These grievances made clear that Plaintiff was not complaining about an isolated incident attributable to a single officer, or even a limited number of officers. Rather, Plaintiff was having an ongoing issue with a host of

correctional officers continuously forcing him to refuse his medications. These grievances alerted prison officials to the problem and gave them ample opportunity to resolve it without litigation and before more officers became involved, which is the purpose of the grievance process. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . [E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."). Plaintiff did not need to file a new grievance each time a new officer became involved in the alleged ongoing campaign to force him to refuse his medications. *Parzyck*, 627 F.3d 121 at 1219 (grievance complaining about the denial of a promised orthopedic consultation was sufficient to cover a subsequent denial by a new doctor because inmates were not required "to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance."); *Owens v. Duncan*, No. 15-CV-1169-MJR-SCW, 2017 WL 895591, at *6 (S.D. Ill. Mar. 7, 2017); *Barrow v. Wexford Health Sources, Inc.*, No. 14-CV-800-NJR-DGW, 2015 WL 5010104, at *4 (S.D. Ill. Aug. 24, 2015).

Consequently, the IDOC Defendants are not entitled to summary judgment and their motion is denied.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Jana Reuter and Anthony Williams (Doc. 72) is **DENIED**.

The motion for summary judgment on the issue of exhaustion filed by Defendants

Michael Bailey, Phillip Baker, James Belford, Mark Bell, Garrick Hale, Charles Heck, Derek Hermann, Justin Jurkowski, Brandon Justice, Kale Lively, Robert O'Leary, Patrick Peek, Wesley Shirley, Robert Tomshack, Treg Vanderkerkhove, and Donald Wanack (Doc. 96) is likewise **DENIED.**

This matter will proceed on Counts 1 and 2 as to all Defendants. The stay on discovery as to the merits of Plaintiff's claims, (*see* Doc. 63), is **LIFTED**. The parties may proceed with discovery. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: August 11, 2021**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**